ROBERT C. MOEST (62166)
Law Offices of Robert C. Moest
2530 Wilshire Boulevard, Second Floor
Santa Monica, California 90403
310-915-2228
310-915-9897 (fax)
rmoest@gmail.com

DAVID M. LIBERMAN (108469)
Law Offices of David M. Liberman
9709 Venice Blvd. No. 4
Los Angeles, California 90034
(424) 298-8648
(424) 298-8728 (fax)
mightyarm@msn.com

Attorneys for Plaintiff

UNITED STATES DISTRICT COURT

CENTRAL DISTRICT OF CALIFORNIA

WESTERN DIVISION

| | |
|---|---|
| KRISHNA LUNCH OF SOUTHERN CALIFORNIA, INC., a California nonprofit religious corporation, | No. 2-22-CV-8265-DSF-PLA |
| Plaintiff, | Date: Dec. 12, 2022 |
| vs. | Time: 1:30 P.M. |
| MONROE GORDON JR., Vice Chancellor of Student Affairs; ALLISON BAIRD-JAMES, Vice Chancellor and Chief Financial Officer; MICHAEL J. BECK, Administrative Vice Chancellor; and DOES 1-10, inclusive, | |
| Defendants. | |

MEMORANDUM OF POINTS AND AUTHORITIES IN SUPPORT

OF PLAINTIFF'S MOTION FOR PRELIMINARY INJUNCTION

# TABLE OF CONTENTS

**page**

TABLE OF AUTHORITIES. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . .  iii

INTRODUCTION. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 1

CRITERIA FOR INJUNCTIVE RELIEF. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 1

BACKGROUND. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 2

    A.    Factual Background. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 2

    B.    UCLA Regulations Applicable To This Action. . . . . . . . . . . . . . . 6

ARGUMENT. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 7

I.      THE PERMIT SCHEME IS FACIALLY UNCONSTITUTIONAL. . . . . . 7

    A.    Introduction. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 7

    B.    UCLA's Permit Scheme Is An Invalid Prior Restraint. . . . . . . . . . . 8

    C.    The $500 Daily Fee Is Invalid. . . . . . . . . . . . . . . . . . . . . . . . . . . . 9

    D.    The Permit Scheme Lacks Procedural Safeguards. . . . . . . . . . . . . 12

    E.    UCLA Cannot Justify The Permit Fee. . . . . . . . . . . . . . . . . . . . . . 13

II.    THE FOUR-DAYS-PER-QUARTER LIMITATION IS INVALID. . . . . . 17

III.   PLAINTIFF IS ENTITLED TO RELIEF PENDENTE LITE. . . . . . . . . . 20

    A.    Likelihood Of Success On The Merits. . . . . . . . . . . . . . . . . . . . . . 20

    B.    Irreparable Harm And The Balance Of Hardships. . . . . . . . . . . . . 21

**TABLE OF CONTENTS (cont.)**

**Page**

    C.      Public Interest. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 21

CONCLUSION. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 22

1

2

3

4

5

6

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

# TABLE OF AUTHORITIES

**Page**

<u>**Cases**</u>

*Alliance for the Wild Rockies v. Cottrell*, .............................. 2, 20
    632 F.3d 1127 (9th Cir. 2011)

*Askins v. U.S. Dep't of Homeland Sec.*, .............................. 14, 16
    899 F.3d 1035 (9th Cir. 2018)

*Bay Area Peace Navy v. United States,* ................................. 14
    914 F.2d 1224 (9th Cir. 1990)

*Board of Trustees of Univ. of N.Y. v. Fox,* ............................. 19
    492 U.S. 469 (1989)

*Berger v. City of Seattle,* .......................................... 8, 15
    569 F.3d 1029 (9th Cir. 2009)

*Buehrle v. City of Key West,* ........................................ 15
    813 F.3d 973 (11th Cir. 2015)

*Central Fla. Nuclear Freeze Campaign v. Walsh,* ...................... 10
    774 F.2d 1515 (11th Cir.1985) *cert. denied,*
    475 U.S. 1120 (1986)

*City of Cincinnati v. Discovery Network,* ............................. 18
    507 U.S. 410 (1993)

*City of Ladue v. Gilleo,* ............................................ 14
    512 U.S. 43 (1994)

*City of Coeur D'Alene,* ............................................. 17
    262 F.3d 856 (9th Cir. 2001)

*Cuviello v. City of Vallejo,* ........................................ 2, 19
    944 F.3d 816 (9th Cir. 2019)

1

# TABLE OF AUTHORITIES

2

3
**Page**

4

*Edwards v. City of Coeur D'Alene,* . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 14

5       262 F.3d 856 (9th Cir. 2001)

6

*Elrod v. Burns,* . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 21

7       427 U.S. 347 (1976)

8

*Epona v. Cnty. of Ventura,* . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 0

9       876 F.3d 1214 (9th Cir. 2017).

10

*Forsyth County v. Nationalist Movement,* . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 9, 13

11      505 U.S. 123 (1992)

12

*Freedman v. Maryland,* . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 12

13      380 U.S. 51 (1965)

14

*FW/PBS, Inc. v. Dallas,* . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 12

15      493 U.S. 215 (1990)

16

*Gannett Co., Inc. v. DePasquale,* . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 21

17      443 U.S. 368 (1979)

18

*Grossman v. City of Portland,* . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 8, 12, 13, 14

19      33 F.3d 1200 (9th Cir. 1994)

20

*Heffron v. Int'l Soc'y for Krishna Consciousness,* . . . . . . . . . . . . . . . . . . . . . . . . . 16

21      452 U.S. 640 (1981)

22

*Higher Taste v. City of Tacoma,* . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 21

23      755 F. Supp.2d 1130 (W.D. Wash. 2010)

24

*Int'l Soc'y for Krishna Consciousness v. Barber,* . . . . . . . . . . . . . . . . . . . . . . . . . . . 2

25      650 F.2d 430 (2d Cir. 1981)

26
27

28

1

**TABLE OF AUTHORITIES (cont.)**

2                                                                    <u>Page</u>

3
*Kovacs v. Cooper,* .. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 17
4        336 U.S. 77, 87 (1949)

5
*Kuba v. 1-A Agric. Ass'n,* . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 14, 15
6        387 F.3d 850 (9th Cir. 2004)

7
*Krishna Lunch of S. Cal. v. Gorden,* . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 8
8        797 Fed.Appx. 311 (9th Cir. 2020)

9
*Long Beach Area Peace Network v. City of Long Beach,* . . . . . . . . . . . . . . 8, 11, 14
10        574 F.3d 1011 (9th Cir. 2009).

11
*McCullen v. Coakley,.* . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 17, 18
12        574 U.S. 464 (2014)

13
*Members of City Council v. Taxpayers for Vincent.* . . . . . . . . . . . . . . . . . . . . . . . 14
14        466 U. S. 789 (1984)

15
*Meyer v. Grant,* . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 18
16        486 U.S. 414 (1988)

17
*Miami Herald Publishing Co., v. City of Hallandale,* . . . . . . . . . . . . . . . . . . . . . . 12
18        734 F.2d 666 (11th Cir. 1984)

19
*Multimedia Publ'g Co. v. Greenville-Spartanburg Airport Dist.,* .. . . . . . . . . . . . 19
20        991 F.2d 154 (4th Cir. 1993)

21
*Murdock v. Pennsylvania,* . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 10
22        319 U.S. 105 (1943)

23
*NAACP W. Region v. City of Richmond,* . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 9, 11
24        743 F.2d 1346 (9th Cir. 1984)

25

26

27

28

1

2

3

**TABLE OF AUTHORITIES (cont.)**

<u>Page</u>

4    *Nationalist Movement  v. Cumming*, 913 F.2d 885 (11th Cir. 1990), . . . . . . . . . 8, 11

5         *vacated and reh'g granted* 921 F.2d 1125 (1990),
          *cert. denied*, 475 U.S. 1120 (1986),

6         *reinstated on reh'g*, 934 F.2d 1482 (1991),

7         *aff'd on other grounds* 505 U.S. 123 (1991)

8    *Nebraska Press Ass'n v. Stuart,* . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 8

9         427 U.S. 539 (1975)

10   *Organization for a Better Austin v. Keefe,* . . . . . . . . . . . . . . . . . . . . . . . . . . . . 8

11        402 U.S. 415 (1971)

12   *Pacific Gas & Elec. v. P.U.C. of California,* . . . . . . . . . . . . . . . . . . . . . . . . . . 22

13        475 U.S. 1 (1986)

14
     *Phillips v. Borough of Keyport,* . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 14
15        107 F.3d 164 (3d Cir. 1997)

16
     *Riley v. National Fed'n of Blind of N. C., Inc.,* . . . . . . . . . . . . . . . . . . . . . . . 17
17        487 U.S. 781 (1988).

18
     *Rosen v. Port of Portland,* . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 14
19        641 F.2d 1243 (9th Cir. 1981)

20
     *Santa Monica Food Not Bombs v. City of Santa Monica,* . . . . . . . . . . . . . . . . . . 9
21        450 F.3d 1022 (9th Cir. 2006).

22
     *Seattle Affiliate of the Oct. 22nd Coal. v. City of Seattle,* . . . . . . . . . . . . . . . . . 10
23        550 F.3d 788 (9th Cir. 2008).

24
     *Southeastern Promotions, Ltd. v. Conrad,* . . . . . . . . . . . . . . . . . . . . . . . . . . . . 12
25        420 U.S. 546 (1975)

26

27

28

MEMORANDUM OF LAW IN SUPPORT OF MOTION FOR PRELIMINARY INJUNCTION

1

**TABLE OF AUTHORITIES (cont.)**

2
**Page**

3

*Southern Oregon Barter Fair,* . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 9, 11
4
        372 F.3d 1128 (9th Cir. 2014)

5

*Spirit of Aloha Temple v. Cnty. of Maui,* . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 9
6
        49 F.4th  1180 (9th Cir. 2022)

7

*Students Against Apartheid Coalition v. O'Neil,* . . . . . . . . . . . . . . . . . . . . . . . 15, 16
8
        660 F. Supp. 333 (W.D. Va. 1987)

9

*Members of City Council of L.A. v. Taxpayers for Vincent,* . . . . . . . . . . . . . . . . 14
10
        466 U.S. 789 (1984)

11

*Thalheimer v. City of San Diego,* . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 14
12
        645 F.3d 1109 (9th Cir. 2011)

13

*The Lands Council v. McNair,* . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 20
14
        537 F.3d 981 (9th  Cir. 2008)

15

*Toyo Tire Holdings of the Americas. Inc. v.* . . . . . . . . . . . . . . . . . . . . . . . . . . . . 20
16
        *Continental Tires of North America, Inc.,*
17
        609 F.3d 975 (9th Cir. 2010)

18

*Turner Broad. Sys., Inc. v. FCC,* . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 14
19
        512 U.S. 622 (1994)

20

*United States v. Grace,* . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 16
21
        461 U.S. 171 (1983)

22

*Weaver v. City of Montebello,* . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . passim
23
        370 F. Supp. 2d 1130 (C.D. Cal. 2019)

24

*Winter v. Natural Res. Def. Council, Inc.,* . . . . . . . . . . . . . . . . . . . . . . . . . . . . 2. 20
25
        555 U.S. 7 (2008)
26

27

28

1

# TABLE OF AUTHORITIES (cont.)

2
<u>Page</u>

3
## Rules and Regulations

4

5
*UCLA Policy 860: Extracurricular Use of University Facilities*,. . . . . . . . . 6, 7, 11
    (Sept. 23, 2008)

6

7
*UCLA Regs. on Activities, Regis. Campus Orgs.* . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 6
    & Use Of Properties (Oct. 29, 2008)

8

9
## Other Authorities

10

11
A.C. Bhaktivedanta Swami Prabhupada, . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 2
    *Srimad Bhavatam,* 4.12.10.

12

13
Lynn Winter, *With Inflation Soaring, More College Students* . . . . . . . . . . . . . . . 7
    *Struggle With Food Insecurity*, Red, Feb. 15, 2022, found at
    https://red.msudenver.edu/2022/with-inflation-
    soaring-more-college-students-struggle-with-food-insecurity

14

15

16

17
Mary McVean, *Cutting down on meat for health*: . . . . . . . . . . . . . . . . . . . . . . . . 17
    *More people are trying it*,
    L.A. Times (Jan. 13, 2015), found at https://www.
    latimes.com/science/sciencenow/la-sci-sn-vegan-health-
    20150121-story.html.

18

19

20

21
Maureen McCoy, et at., *Food Insecurity On College Campuses:*. . . . . . . . . . . . . 7
    *The Invisible Epidemic,* Health Affairs, Jan. 31, 2022,
    found at https://www.healthaffairs.org/
    do/10.1377/forefront.20220127.264905.

22

23

24
Thomas J. Davis. .. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 21
    *Assessing Constitutional Challenges to*
    *University Free Speech Zones Under Public Forum Doctrine*,
    79 Ind. L. J. 267 (2004)

25

26

27

28

---

**INTRODUCTION**

By this motion, Plaintiff seeks a preliminary injunction against Michael J. Beck in his official capacity. Mr. Beck has been identified by counsel as the UCLA official with final authority over whether plaintiff will be permitted to conduct its vegan and vegetarian lunch program–"Krishna Lunch"–at UCLA. Krishna Lunch uses its program to teach that animals are sentient beings, entitled to be protected from slaughter and abuse. Plaintiff contends the meat-based diet causes serious disease and contribute to climate change. Krishna Lunch, which is meat-free, is intended tocommunicate this message to the UCLA community.

During the spring and summer quarters (March to September 2022) Plaintiff conducted Krishna Lunch twice a week at a location on Bruin Walk East, near Kerckhoff Hall.  No fee was imposed, and the program was conducted without indicent. When plaintiff reapplied to operate the program during the fall quarter (which began on September 19, 2022 and ends on December 9, 2022), UCLA imposed new and unwarranted conditions, effectively precluding Plaintiff from conducting Krishna Lunch for the Fall quarter. UCLA imposed a $500 daily permit fee and seeks to limit Krishna Lunch to four-days per quarter. Nothing justifies either new restriction

Plaintiff seeks a preliminary injunction permitting it to operate on the same basis as in the spring and summer quarters, and prohibiting the new requirement of a $500 per day fee and the limitation to four days per quarter. Plaintiff has an impeccable record of adhering to UCLA's rules in effect during the spring and summer.. No cognizable governmental interest supports the new restrictions. Relief pendente lite is necessary to preserve core Constitutional rights.

**CRITERIA FOR INJUNCTIVE RELIEF**

"Federal Rule of Civil Procedure 65 governs the issuance of TROs and preliminary injunctions, and courts apply the same standard to both." *Weaver v. City of Montebello*, 370 F. Supp. 2d 1130, 1134 (C.D. Cal. 2019). The moving

party must show: (1) a likelihood of success on the merits; (2) that the moving party will suffer irreparable harm in the absence of preliminary relief; (3) that the balance of equities favors the moving party; and (4) the injunction is in the public interest. *Winter v. Natural Res.Def. Council, Inc.,* 555 U.S. 7, 21 (2008); *accord Cuviello v. City of Vallejo*, 944 F.3d 816, 826 (9ᵗʰ Cir. 2019).[1]

## BACKGROUND

A.  <u>Factual Background</u>. Plaintiff advocates the evangelical teachings of Krishna consciousness, a religion within "the broad theological umbrella of the Vaishnava tradition of Bhakti Hinduism, formalized in the ninth century in Southern India." *International Soc'y for Krishna Consciousness v. Barber*, 650 F.2d 430, 433 (2d Cir. 1981).  Krishna consciousness was introduced in America in 1965 by His Divine Grace A.C. Bhaktivedanta Swami Prabhupada (Srila Prabhupada) the eleventh guru in a succession of spiritual teachers dating back to the 15ᵗʰ century.

Krishna consciousness teaches that chanting the Names of God and distributing sanctified, vegan and vegetarian food – known in the Sanskrit language as "prasadam" – is essential for the spiritual and material welfare of Society. "The Krishna consciousness movement is based on this principle: chant the Hare Krishna mantra . . . as much as possible . . . and, as far as possible, distribute prasāda. . . . Simply by liberal distribution of prasāda . . . the whole world can become peaceful and prosperous."  A.C. Bhaktivedanta Swami Prabhupada, *Srimad Bhavatam,* 4.12.10.

To further this core evangelical mission, Krishna Lunch seeks to provide a

---

[1] "An injunction is also appropriate when a plaintiff raises 'serious questions going to the merits,' demonstrates that 'the balance of hardships tips sharply in the plaintiff's favor,' and 'shows that there is a likelihood of irreparable injury and that the injunction is in the public interest.'" *Weaver*, 370 F. Supp. 3d at 1134 (quoting *Alliance for the Wild Rockies v. Cottrell*, 632 F.3d 1127, 1135 (9ᵗʰ Cir. 2011) .

practical, concrete example of an alternative to a meat-based economy and food supply.  By consuming prasadam in the Krishna Lunch  program, members of the UCLA community will attain a better understanding of such issues as global warming and climate change, vegetarianism and veganism, animal protection, and God-centered ecology. By sampling Plaintiff's sanctified food, participants will develop an appreciation of the benefits and enjoyment of a Krishna conscious lifestyle, including a vegetarian and vegan diet.

On April 4, 2022, Dennis Brown, president and on-site manager of Krishna Lunch, requested permission from the UCLA Events Office to conduct Krishna Lunch twice a week for the Spring and Summer quarters. On May 3, 2022 the UCLA Events Department granted "provisional approval for Krishna Lunch to reserve an outdoor space twice a week for the remainder of the Spring Quarter to engage in free speech activity which . . . includes the distribution of vegetarian and vegan meals and discussions relating to the specialized food." (Email from Chansoth Hill, UCLA Events Administrator to Dennis Brown, Pres. of Krishna Lunch, May 3, 2022; Brown Decl. ¶ 7, Ex. A).

Following the approval, Plaintiff and UCLA entered into a *University of California Los Angeles Special Events Agreement* ("Agreement") which includes most of the rules and regulations plaintiffs were required to follow. (Brown Decl. ¶ 8; Ex. B). On July 3, 2022, approval was extended to September 15, 2022. (Hill email to Brown, July 3, 2022; Brown Decl. ¶ 8, Ex. C).

On June 7, 2022, Plaintiff began the Krishna Lunch program at a designated location on Bruin Walk East. The Summer-Spring permit expired on September 15, 2022.  Plaintiff was never informed by Ms. Hill or any other UCLA official that there had been problems with Krishna Lunch. Plaintiff meticulously followed all of the regulationsset forth in the Agreement (*See* Brown Decl. ¶ 12).

On Aug. 22, 2022, Mr. Brown (aka "Govinda") asked UCLA Events Coordinator, Chansoth Hill, whether it was time for Krishna Lunch to apply for a

---

3

MEMORANDUM OF LAW IN SUPPORT OF MOTION FORPRELIMINARY INJUNCTION

permit for the Fall quarter, which commenced on September 19, 2022.  The following day, August 23, 2022, Ms. Hill replied that she had forwarded Govinda's request to the "Administration" and would let him know when she received a reply. (Brown Decl. ¶ 13, 14).

Govinda did not hear from Ms. Hill or anyone else at UCLA for two weeks. Accordingly, on  Sept. 7, 2022, he inquired as to the status of the permit. Ms. Hill replied that "[t]he University Administration committee is meeting later today [Sept. 7] about this matter" and that she "hope[d] to get an answer for you by [Sept. 8]." (Brown Decl. ¶ 15).

On September 12, 2022, Govinda again inquired about the status of the request. Ms. Hill informed him that she was "still waiting to get something from the Administration." (Brown Decl. ¶ 15). On September 14, 2022, (the last day before the Fall quarter was to begin) Govinda expressed his anxiety that a permit had not yet been approved. (Brown Decl. ¶16). Ms. Hill replied that she "was told that information will be sent to [him] tomorrow." The next day, Ms. Hill stated that the "latest information [she had was] that the *Administration* will be sending [Govinda] a response *before next week*." (*Id.* emphasis added).

On September 17, 2022, Ms. Hill informed Govinda that the Bruin Walk East location was no longer available. (Brown Decl. ¶ 16; Ex. F). Govinda thus requested a meeting to discuss various alternative locations and the fee issue. The meeting occurred on campus on September 22, 2022, at which time Govinda and Ms. Hill reviewed several alternative locations that might be available. Ms. Hill stated during the meeting that those areas were ostensibly available, but no matter which area was approved, there would be a non-waiveable $500 permit fee. (Brown Decl. ¶ 17).

On September 29, 2022, ten days *after* the Fall quarter began, Govinda sent another email to Ms. Hill specifically requesting a location near the Bruin Bear on the west border of Bruin Plaza, which they had discussed in their previous

MEMORANDUM OF LAW IN SUPPORT OF MOTION FORPRELIMINARY INJUNCTION

1   meeting. A true and correct Google Earth photo of Bruin Plaza and the Bear statue
2   is attached to the Dennis Brown declaration as Exhibit G.

3       Govinda also reiterated there were no problems in the four months that
4   Krishna Lunch distributed its sanctified food on Bruin Walk East, and that no fees
5   had previously been assessed by UCLA. Govinda further explained that Krishna
6   Lunch was a nonprofit, religious organization that relied solely on voluntary
7   donations; that Krishna Lunch could not afford the $500 daily fee; and that
8   Krishna Lunch was suffering substantial constitutional and economic damages by
9   UCLA's delay in approving a new permit. (Brown Decl. ¶¶ 18-20; Ex. H).

10      On October 6, 2022, Ms. Hill informed Mr. Govinda that UCLA would not
11  waive (or even reduce) the $500 fee; nor were any alternative locations available
12  that did not entail the $500 charge. (Brown Decl. ¶ 22; Ex. I).

13      Krishna Lunch's core religious mission is to promote, through the
14  distribution of our sanctified food, a spiritual lifestyle in which animals are
15  protected and treated with love and compassion. Plaintiff seeks to end the
16  abominable "factory farms" that slaughter *billions* of animals each year, and treat
17  animals with extreme cruelty under the most inhumane conditions imaginable.
18  (Brown Decl. ¶¶ 5-8).

19      Plaintiff does not seek to profit from the distribution of its sanctified food.
20  Plaintiff does not sell its lunches, but requests a voluntary donation. The donations
21  received do not inure to the benefit of any private individual, but support
22  plaintiff's religious mission and defray the costs of the lunch program. (*See*
23  Brown Decl. ¶¶ 19-20). If a person cannot make a donation, but wants a lunch
24  plate, plaintiff gives it to that person for free. (*Id*. ¶ 20).

25      In 2016, Krishna Lunch was informed by Senior Campus Counsel, David
26  Birnbaum, that Krishna lunch would be prosecuted under Cal. Educ. Code §
27  92440.5 and Cal. Code Regs. §§ 100004 and 1000012, and other applicable codes
28  and regulations, should it attempt to conduct the Krishna Lunch program without

1    approval from the University. (Liberman Decl. ¶__; Ex.A).

2            The UCLA Campus Regulations warn that "Violation of University policies

3    or campus regulations may subject a person to legal penalties." *UCLA Regs. on*

4    *Activities, Regis. Campus Orgs. & Use Of Properties*, § IV.A.2 (Oct. 29, 2008)

5    ("Campus Regs."). Because of these warnings, Plaintiff has ceased all its campus

6    activities until this matter is resolved by the Court. (Brown Decl.¶ 25.).

7            B.   UCLA Regulations Applicable To This Action. "The University of

8    California, Los Angeles (UCLA) is committed to assuring that all persons may

9    exercise the constitutionally protected rights of free expression, speech, assembly,

10   and worship." Campus Regs. § I.  The "paved pedestrian walkways and lawns on

11   University property are generally open to the public" between the hours of 6:00

12   a.m. and midnight. Campus Regs. § II.

13          "Any person who is not a student, officer, official volunteer, employee, or

14   emeritus of UCLA, nor a Regent of the University of California, nor a member of

15   a household authorized to reside in University Property" Campus Regs. § II., may

16   use campus grounds if approved by the UCLA Events Office. *See UCLA Policy*

17   *860: Extracurricular Use of University Facilities*, § III. A.-E. (Sept. 23, 2008)

18   ("*Policy 860*"), found at http://www.adminpolicies.ucla.edu/pdf/860.pdf,

19          "All Extracurricular Use must be submitted through EOL Event Registration

20   for appropriate review and approval a minimum of ten (10) working days PRIOR

21   to the execution or administration of any event or activity. Any EOL Event

22   Registration submitted after the ten (10) working days will be subject to denial

23   and/or cancellation." *Policy 860* at § III. C.

24          "No non-affiliate of the University shall hold or conduct any demonstration

25   or gathering in or upon University Property without prior written approval from

26   the UCLA Events Office, and subject to such requirements regarding time, place,

27   and manner as the UCLA Events Office may impose. Criteria for approval of

28   demonstrations or gatherings shall be content-neutral." Campus Regs. § IV. B. 7.

"Campus fees or charges may apply to certain activities and/or services; all fees must be paid in advance of the activity or event date. Failure to pay necessary fees may subject the activity or event to cancellation. If payment can not be made for all applicable fees prior to the event date, payment arrangements must be made in advance with the appropriate CSP Advisor and the campus UCLA Events Office." Campus Regs. IV. A. 13.

"A facility rental fee, determined by the facility manager, will be assessed for Extracurricular Use. All costs for services, goods and/or equipment, including, but not limited to: custodial services, utilities, event management and supervision, insurance, equipment rentals, lighting systems and sound systems, associated with the extracurricular activity will be assessed to the activity, and be the responsibility of the University Guarantor of the event or activity." *Policy 860* § III. E. 4.

**ARGUMENT**

I.    THE PERMIT SCHEME IS FACIALLY UNCONSTITUTIONAL

A.    Introduction. Plaintiff does not ask for an exemption from reasonable time, place and manner regulations. Nor does it ask UCLA to subsidize the exercise of its religious, expressive and associational activities. Plaintiff seeks only to conduct a peaceful and orderly lunch program consistent with the academic mission of the UCLA, and of great benefit to the UCLA community.[2]

Standing in the way of Krishna Lunch is a non-waiveable $500 daily permit

_____

[2]   In addition to disseminating its pro-animal message, plaintiff provides an important service to students experiencing "food insecurity" as a result of inflation.  *See, e.g.*, Lynn Winter, *With Inflation Soaring, More College Students Struggle With Food Insecurity*, Red, Feb. 15, 2022, found at https://red.msudenver.edu/2022/with-inflation-soaring-more-college-students-struggle-with-food-insecurity; *see also, e.g.,* Maureen McCoy, et at., *Food Insecurity On College Campuses: The Invisible Epidemic,* Health Affairs, Jan. 31, 2022, found at https://www.healthaffairs.org/ do/10.1377/forefront.20220127.264905.

MEMORANDUM OF LAW IN SUPPORT OF MOTION FORPRELIMINARY INJUNCTION

fee, which plaintiff cannot pay. (Brown Decl. ¶¶ 10-11). The $500 fee is not rooted in actual costs to UCLA, and directly implicates quintessential First Amendment rights to religion, speech and association. The four-days-per-quarter limit on Krishna Lunch also severely and unreasonably burdens Plaintiff's rights.

B. UCLA's Permit Scheme Is An Invalid Prior Restraint. Because it directly implicates protected expression, *see Krishna Lunch of S. Cal. v. Gorden*, 797 Fed. Appx. 311, 313-14 (9th Cir. 2020), UCLA's permit scheme, which gives administrators "the power to deny use of a forum in advance of actual expression" *S.E. Promotions, Ltd. v. Conrad*, 420 U.S. 546, 553 (1975), is a prior restraint on speech that comes to this Court with "a heavy presumption against its constitutionality." *Org. for a Better Austin v. Keefe*, 402 U.S. 415, 419 (1971). "This heavy presumption is justified by the fact that 'prior restraints on speech . . . are the most serious and the least tolerable infringement on First Amendment rights.'" *Grossman v. City of Portland,* 33 F.3d 1200, 1204 (9th Cir. 1994) (quoting *Nebraska Press Ass'n v. Stuart,* 427 U.S. 539, 559 (1975)).

In a decision directly applicable here, the Eleventh Circuit in *Nationalist Movement  v. Cumming*, 913 F.2d 885 (11th Cir. 1990), *aff'd en banc,* 934 F.2d 1482 (1991), *cert. denied*, 475 U.S. 1120 (1986) struck down a $1000 daily permit fee for a parade and rally. The court held: "It is enough to hold, as we do, that the Forsyth County provision for a permit fee of up to $1,000 for each day that a parade or rally takes place exceeds the constitutional requirement that such a charge be *at most nominal.*" *Id*. at 891 (emphasis supplied).

"Prior restraints on speech are disfavored and carry a 'heavy presumption' of invalidity." *Long Beach Area Peace Network v. City of Long Beach*, 574 F.3d 1011, 1019 (9th Cir. 2009). "The presumptive invalidity and offensiveness of advance notice and permitting requirements stem from the significant burden that they place on free speech." *Berger v. City of Seattle*, 569 F.3d 1029, 1037 (9th Cir. 2009). It is well-established that Plaintiff has standing "to pursue facial and

MEMORANDUM OF LAW IN SUPPORT OF MOTION FOR PRELIMINARY INJUNCTION

as-applied challenges to [the UCLA permit] requirements." *Weaver*, 370 F. Supp. 3d at 1134-35; *see Santa Monica Food Not Bombs v. City of Santa Monica*, 450 F.3d 1022, 1033–34 (9th Cir. 2006).[3]  Prior restraints such as the one here "have a chilling effect on protected speech because potential speakers may choose to self-censor rather than either acquire a license or risk sanction." *Epona v. County of Ventura,* 876 F.3d 1214, 2121 (9th Cir. 2017).

Additionally, although the permitting scheme may "not regulate the specificities of religious conduct, its regulation of where [and when] religious congregants may gather [for Krishna Lunch] makes it 'broad enough' to provide a sufficient nexus to expression." *Spirit of Aloha Temple v. County. of Maui,* 49 F.4th  1180, 1190 (9th Cir. 2022)*; see S. Or. Barter Fair*, 372 F.3d 1128, 1135 (9th Cir. 2014).[4]  "[I]n enacting a law, the operation of that law may have a vastly uneven impact. There is no equality in a law prohibiting both rich and poor from sleeping under the bridges of Paris; there is no equality in a law prohibiting anonymous pamphleteering by both popular and unpopular groups." *NAACP W. Region v. City of Richmond,* 743 F.2d 1346, 1358 (9th Cir. 1984).

While defendants may promulgate reasonable time, place and manner regulations, such enactments must be content neutral and narrowly tailored to UCLA's substantial interests.  They must also leave open ample alternative channels of communication. The permit fee and procedural defects challenged here fail to meet this standard.

C. <u>The $500 Daily Fee Is Invalid</u>. The Supreme Court has expressly held

---

[3] Facial challenges are permitted where, as here, the regulation "sweeps too broadly, penalizing a substantial amount of speech that is constitutionally protected." *Forsyth,* 505 U.S. at 130.

[4] "For a facial prior restraint challenge, it matters less that the scheme is meant to be generally unrelated to speech than that it specifically targets, rather than simply happens to affect, expression protected by the First Amendment." *Id*.

MEMORANDUM OF LAW IN SUPPORT OF MOTION FOR PRELIMINARY INJUNCTION

that a regulation demanding an *advance fee* on events that are held on public property is a "prior restraint" on expression that bears a "heavy presumption" against its constitutional validity. *Forsyth County v. Nationalist Movement,* 505 U.S. 123, 130 (1992). Put bluntly, Plaintiff cannot afford the daily $500 charge (Brown Decl. ¶¶ 10-11) which is  "tantamount to a constructive denial of a . . . permit." *Seattle Affiliate of the Oct. 22nd Coal. v. City of Seattle*, 550 F.3d 788, 795 (9th Cir. 2008).  The fee is neither nominal nor calculated to defray UCLA's actual expense in allowing Krishna Lunch to serve its sanctified food two days (six hours) per week.

Almost 80 years ago, the Supreme Court in *Murdock v. Pennsylvania*, 319 U.S. 105 (1943) struck down a law that required the Jehovah's Witnesses to obtain a permit and pay a license fee to preach their gospel. The Court emphasized that "[a] state may not impose a charge for the enjoyment of a right granted by the federal constitution. . . .  The power to impose a license tax on the exercise of these freedoms is indeed as potent as the power of censorship which this Court has repeatedly struck down." *Id.* at 113.

*Murdock* stands for the principle that government entities such as UCLA may assess permit fees [5] *only* where the fee is *both* "nominal . . . and related to the expenses incidental to the policing of the event." *Id.*; *see Cent. Fla. Nuclear Freeze Campaign v. Walsh*, 774 F.2d 1515, 1522 (11th Cir.1985) *cert. denied*, 475 U.S. 1120 (1986)("An ordinance which charges more than a nominal fee for using public forums for public issue speech violates the First Amendment.").[6]

---

[5]  It matters not whether the $500 is labeled a "fee," or "tax," or "assessment," or "charge" – its destructive constitutional impact on Krishna Lunch is the same,

[6]  "To repeat, 'we read *Cox* as authorizing only nominal charges for the use of city streets and parks to further First Amendment activities. An ordinance which charges more than a nominal fee for using public forums for public issue speech,

(continued...)

MEMORANDUM OF LAW IN SUPPORT OF MOTION FORPRELIMINARY INJUNCTION

Imposition of the $500 fee also has a "vastly uneven impact" *NAACP,* 743 F.2d at 1356 on wealthy applicants versus nonprofit applicants such as Krishna Lunch, who depend solely on donations for their survival, and who do not have the funds for a $500 daily fee. The fee "risk[s] placing speech on topics of public importance within the purview of only the wealthy or those who enjoy the support of local authorities." *Long Beach Area Peace Network,* 574 F.3d at 1022.[7]

In *Nationalist Movement, supra,* the court struck down a $1000 daily permit fee for a parade and rally. The court held: "It is enough to hold, as we do, that the Forsyth County provision for a permit fee of up to $1,000 for each day that a parade or rally takes place exceeds the constitutional requirement that such a charge be at most nominal." 913 F.2d at 891.

The $500 daily fee here is neither nominal nor tied to any legitimate expenses. In the four months Krishna Lunch was allowed to distribute sanctified food on campus, there were no problems or complaints.  Nor were any expenses incurred by UCLA that were more aptly attributed to the Plaintiff, either before or after the event. (Brown Decl.¶ 24).[8] As thus stated by the Ninth Circuit in *NAACP,* there is "no equality in a law prohibiting both rich and poor from sleeping under the bridges of Paris; there is no equality in a law prohibiting anonymous pamphleteering by both popular and unpopular groups" 743 F.2d at 1356.

---

[6](...continued)
violates the First Amendment." *Nationalist Movement,* 913 F.2d at 891 (quoting *Cent. Fla. Nuclear Freeze Campaign,* 774 F.2d at 1523).

[7] Even so, the payment of $500 for the *right* to engage in protected expression is detestable, regardless of capacity to pay.

[8] Krishna Lunch did not require *any* authorized costs for such items as "custodial services, utilities, event management and supervision, insurance, equipment rentals, lighting systems and sound systems." *See Policy 860* § III. E.; Brown Decl. ¶ 24).

1    The $500 fee is thus heavily biased in favor of applicants that have a stable

2    of well-heeled donors. For them, the $500 fee may be of no consequence. For

3    Plaintiff, however, the $500 fee is unaffordable, and imperils the core values of the

4    First Amendment: "Freedom of speech, freedom of the press, freedom of religion

5    are available to all, not merely to those who can pay their own way." *Murdock*,

6    379 U.S. at 111.

7    D.   The Permit Scheme Lacks Procedural Safeguards. "Both the procedural

8    hurdle of filling out and submitting a written application, and the temporal hurdle

9    of waiting for the permit to be granted may discourage potential speakers."

10   *Grossman,* 33 F.3d at 1206; *see also Cuviello*, 944 F.3d at 826-27. UCLA's permit

11   scheme  "runs afoul of the First Amendment [because] it lacks certain [procedural]

12   safeguards." *S.E. Promotions,* 420 U.S. at 560.  Even a content neutral licensing

13   regulation must provide "procedural safeguards designed to obviate the dangers of

14   a prior restraint on speech." *Freedman v. Maryland*, 380 U.S. 51, 58 (1965).

15   In striking down an advance permit requirement for adult establishments,

16   the Court in *FW/PBS, Inc. v. Dallas,* 493 U.S. 215 (1990) (plurality opinion)

17   highlighted two safeguards in particular: "The licensor must make the decision

18   whether to issue the license within a specified and reasonable time period during

19   which the status quo is maintained, and there must be the possibility of prompt

20   judicial review in the event that the license is erroneously denied." *Id.* at 228

21   (citing *Freedman,* 380 U.S. at 227); *accord Miami Herald Publ'g Co.*, *v. City of*

22   *Hallandale*, 734 F.2d 666, 675 (11th Cir.1984) ("Two [*Freedman*] procedural

23   safeguards are that the licensor be required to act upon a license application within

24   a specified, brief period and that the license applicants be guaranteed prompt

25   judicial review of licensing decisions."); *accord Weaver*, 370 F. Supp.2d at 1136.

26   Neither safeguard is present here. Krishna Lunch submitted its permit

27   request for the Fall quarter on August 22, 2022.  For over two months, Plaintiff

28   waited for a decision, but was instead given the run a round while anonymous

MEMORANDUM OF LAW IN SUPPORT OF MOTION FORPRELIMINARY INJUNCTION

1  "Administrators" pondered the issue. (Brown Decl. ¶¶ 13-22).  Finally, on October

2  6, 2022 – two months after the initial request and over two weeks after classes

3  started – the Defendants rejected Plaintiff's request by imposing the non-

4  waiveable $500 fee and limiting Krishna Lunch to four-days-per-quarter.

5      The Ninth Circuit has recognized that, without a fair and reasonable

6  deadline, a government entity such as UCLA can "effectively shut down

7  gatherings by delaying permit decisions indefinitely." *Grossman,* 33 F.3d at 1206.

8  "All advance notice requirements tend to inhibit speech. The simple knowledge

9  that one must inform the government of his desire to speak and must fill out

10  appropriate forms and comply with applicable regulations discourages citizens

11  from speaking freely." *NAACP,* 743 F.2d at 1355.[9]

12      The UCLA licensing scheme fails to provide these safeguards. There is no

13  specific time in the guidelines for acting on permit applications, and "an

14  application [can thus] languish indefinitely"in the UCLA bureaucratic "briar

15  patch." *See Lakewood,* 486 U.S. at 771. The Ninth Circuit has recognized that,

16  without a deadline, a government entity such as UCLA can "effectively shut down

17  gatherings by delaying permit decisions indefinitely." *Grossman,* 33 F.3d at 1206.

18  The uncertainty of knowing when, if ever, UCLA administrators will act on the

19  permit application hamstrings the arrangements for Krishna Lunch, something that

20  has happened to plaintiff repeatedly. (Brown Decl. ¶ 25).

21      E.  UCLA Cannot Justify The Permit Fee.  It is accepted "that government,

22  in order to regulate competing uses of public forums, may impose a permit

23  requirement" on expressive activities. *Forsyth,* 505 U.S. at 130. It is universally

24  established, however, that such regulations must be narrowly tailored to serve a

25

26  _____

27      [9]  "Moreover, because of the delay caused by complying with the permitting procedures, '[i]mmediate speech can no longer respond to immediate issues."

28  *Grossman,* 33 F.3d at 1206 (citations and quotes omitted).

significant governmental interest; must leave open ample alternative channels for communication of the information; and may not delegate overly broad licensing discretion to a government official.  *E.g., Askins v. U.S. Dep't of Homeland Sec*., 899 F.3d 1035, 1044 (9th Cir. 2018); *Long Beach Peace Network,* 574 F.3d at 1023–24.

Any restriction on speech must provide an efficacious alternative to the speech that is restricted. "[E]ven regulations that do not foreclose an entire medium of expression, but merely shift the time, place, or manner of its use, must 'leave open ample alternative channels for communication.'" *City of Ladue v. Gilleo*, 512 U.S. 43, 56 (1994). An alternative is not "adequate if the speaker's 'ability to communicate effectively is threatened.'" *Bay Area Peace Navy v. United States,* 914 F.2d 1224, 1229 (9th Cir. 1990)(quoting *Members of City Council of L.A. v. Taxpayers for Vincent,* 466 U.S. 789, 812 (1984) or the speaker cannot reach the "'intended audience.'" *Bay Area Peace Navy,* 914 F. 2d at 1229.[10]

UCLA "has the burden of justifying its restriction on speech" *Thalheimer v. City of San Diego*, 645 F.3d 1109, 1116 (9th Cir. 2011); *Rosen v. Port of Portland*, 641 F.2d 1243, 1246 (9th Cir. 1981) including "the burden of proving that the 'narrowly tailored' and 'alternative communication' prongs [of the test] are satisfied." *Bay Area Peace Navy,* 914 F.2d at 1227.  "If the ordinance fails to satisfy any one of these three prongs, it is unconstitutional." *Edwards v. City of Coeur D'Alene,* 262 F.3d 856, 862 (9th Cir. 2001); *Grossman v. City of Portland,* 33 F.3d 1200, 1205 (9th Cir. 1995); *Kuba v. 1-A Agric. Ass'n*, 387 F.3d 850, 858

---

[10]  Defendants must "do more than simply 'posit the existence of the disease to be cured.'" *Phillips v. Borough of Keyport*, 107 F.3d 164, 175 (3d Cir. 1997) (quoting *Quincy Cable TV, Inc. v. FCC,* 768 F.2d 1434, 1455 (D.C. Cir. 1985)). They must "demonstrate that the recited harms are real, not merely conjectural, and that the regulation will in fact alleviate these harms in a direct and material way." *Turner Broadcasting Sys. v. FCC*, 512 U.S. 622, 664 (1994).

(9th Cir. 2004).[11]

In the present matter, the defendants have failed to establish that the $500 fee, and the four-day limit, are narrowly tailored to UCLA's actual expenses and interests. Defendants have not explained why the fee cannot be waived, or lowered, and why the two-days-per-week, which was the arrangement for the Spring and Summer quarters, is no longer viable.  There is no substantiated claim that Plaintiff's activities will obstruct pedestrian traffic flow at the Bruin Bear location; that it will create a health or safety problem; or that it will otherwise disrupt the normal educational function of the University.

UCLA "has presented no evidence that [Krishna Lunch] inflicted any temporary or permanent damage" on campus grounds in the four months it was permitted on Bruin Walk East, *see, e.g.,Students Against Apartheid Coalition v. O'Neil*, 660 F. Supp. 333, 338 (W.D. Va. 1987), or that Krishna Lunch is "inimical to the rights of others who use the campus." *Id.* Nor is there a likely problem with pedestrian traffic congestion in an area as expansive as Bruin Plaza. *Cf. Berger*, 569 F.3d at 1046 ("It is hard to fathom how an individual performing for two or three others in a park as large as the Center would pose coordination or traffic flow problems for the City.").

Bruin Plaza is an expansive area freely open to students and the general public. It is not a "special enclave" that otherwise needs unique protection. *Cf.*

---

[11]   The Court should not merely take UCLA's "word" that the permit fee somehow serves whatever interests it may assert. UCLA "must demonstrate that it ha[s] a reasonable basis for believing that its regulation would further [its asserted] interests." *Buehrle v. City of Key West*, 813 F.3d 973, 978–79 (11th Cir. 2015) (quoted in *Weaver*, 370 F. Supp. 3d at 1138).  "[M]erely invoking [significant governmental] interests . . . is insufficient" to meet the government's burden of proof to justify a regulation that burdens free speech. [UCLA] must also show that [Krishna Lunch] endangers those [significant] interests." *Kuba,* 387 F.3d at 859 (citation omitted).

MEMORANDUM OF LAW IN SUPPORT OF MOTION FORPRELIMINARY INJUNCTION

*United States v. Grace*, 461 U.S. 171, 179–80 (1983) ("no separation, no fence, and no indication whatever to persons stepping from the street to the curb and sidewalks that serve as the perimeter of the Court grounds that they have entered some special type of enclave"); *see also Askins,* 899 F.3d at 1046 (same as to various border areas).

Although it reserved the right to do so, UCLA imposed no fees – before or after – the Spring and Summer Krishna Lunch program on Bruin Walk East. (*See* Agreement ¶¶ 2-4; Ex. B).  That is because there were no valid fees that could legitimately be assessed. Krishna Lunch supplied its own (sanctified vegan and vegetarian) food, and all of the equipment necessary to prepare, transport and serve it. Krishna Lunch also supplied its own cleaning materials, as well as trash receptacles, workers, pedestrian traffic control devices, security, and the like. All Krishna Lunch personnel were (and are), moreover, *fully vaccinated* against Covid-19. (Brown Decl. ¶ 21).  UCLA was not required to furnish any materials, or provide extra personnel or services of any sort. Defendants have utterly "fail[ed] to prove a sufficient nexus between its [new restrictions]  and its "broad restraint of plaintiffs' communicative behavior." *E.g., Students Against Apartheid*, 660 F. Supp. at 339.

Nor has UCLA provided a feasible alternative to the exorbitant fee, either by waiving it or lowering it to a reasonable amount. Nor has UCLA provided an alternative location where Krishna Lunch could operate twice a week, as it did at Bruin Walk East during the Spring and Summer.[12] "The First Amendment protects the right of every citizen to `reach the minds of willing listeners and to do so there must be opportunity to win their attention.'" *Heffron v. Int'l Soc. for Krishna*

---

[12] Although Plaintiff's current request focuses on the Bruin Bear, there are numerous alternative designated areas that are available at a particular time, and which could easily accommodate Krishna Lunch at times when the Bruin Bear is "booked." (Brown Decl. ¶ 17).

MEMORANDUM OF LAW IN SUPPORT OF MOTION FOR PRELIMINARY INJUNCTION

*Consciousness,* 452 U.S. 640, 655 (1981) (quoting *Kovacs v. Cooper,* 336 U.S. 77, 87 (1949) ). "If an ordinance effectively prevents the speaker from reaching his [or her] intended audience," as does the $500 fee and the four-day restriction, "it fails to leave open ample alternative channels of communication." *Coeur D'Alene*, 262 F.3d at 866; *Peace Navy,* 914 F.2d at 1229 ("An alternative is not ample if the speaker is not permitted to reach the 'intended audience.'").

Animal rights, global warming and climate change, and the health benefits of a plant-based diet are timely and compelling issues that can only be fully understood by having the opportunity to actually *sample* prasadam. Additionally, Plaintiff has extensive experience in persuading persons to take up some degree of a vegetarian or vegan diet and lifestyle, and has found that it requires (1) regular, ongoing interaction with the "intended audience" and (2) the opportunity for interested persons to actually *sample* the different vegetarian and vegan preparations. Without these two elements, plaintiff does not have a fair and meaningful opportunity to disseminate its message to the "intended audience." (Brown Decl.  ¶¶ 6-7); *See, e.g*, Mary McVean, *Cutting down on meat for health*: *More people are trying it*, L.A. Times (Jan. 13, 2015), found at https://www. latimes.com/science/sciencenow/la-sci-sn-vegan-health-20150121-story.html.

II.     THE FOUR-DAYS-PER-QUARTER LIMITATION IS INVALID.

The same principles applicable to the $500 fee show that the four-days per-quarter restriction is invalid. "[T]he government . . . 'may not regulate expression in such a manner that a substantial portion of the burden on speech does not serve to advance its goals.'" *McCullen v. Coakley,* 574 U.S. 464, 486 (2014)(quoting *Riley v. National Fed'n of Blind of N. C., Inc.,* 487 U.S. 781, 795 (1988)).

In *McCullen*, the Court balanced a buffer zone restriction around abortion clinics with abortion opponents' right to reach their audience. The court acknowledged that the buffer zone served important interests in "ensuring public

MEMORANDUM OF LAW IN SUPPORT OF MOTION FORPRELIMINARY INJUNCTION

safety and order, promoting the free flow of traffic on streets and sidewalks, protecting property rights, and protecting a woman's freedom to seek pregnancy-related services." *Id.* at 486-87. At the same time, however, the Court found that the buffer zones "compromise[d] petitioners' ability to initiate the close, personal conversations that they view as essential to 'sidewalk counseling.'" *Id.* at 486.

Finding the buffer zones overly burdensome, *McCullen* expressly held that

the buffer zones impose serious burdens on [Plaintiff's] petitioners' speech. At each of the . . . clinics where petitioners attempt to counsel patients, the zones carve out a significant portion of the adjacent public sidewalks, pushing petitioners well back from the clinics' entrances and driveways. The zones thereby compromise petitioners' ability to initiate the close, personal conversations that they view as essential to 'sidewalk counseling.'

*Id.* at 489.

As in *McCullen*, so here too it would be "wrong to downplay these burdens on plaintiff's speech." *Id*. at 487. The Court in *McCullen* recognized (as should the Court here) that "one-on-one communication is 'the most effective, fundamental, and perhaps economical avenue of political discourse.'" *Id.* at 488 (quoting *Meyer v. Grant,* 486 U.S. 414, 424 (1988).

Identical issues are presented here. The four-day restriction and the $500 permit fee effectively prevent ongoing personal contact essential for Plaintiff to convey its pro-animal/anti-meat message to the intended audience. (Brown Decl. ¶ 9). Ongoing, one-to-one contact with the "intended audience" is essential to the delivery of the pro-animal/anti-meat message. (Brown Decl. ¶ 7). "When the government makes it more difficult to engage in these modes of communication, it imposes an especially significant First Amendment burden." *Id*. at 489.

The availability of numerous viable and less burdensome alternatives defeats any argument that the $500 fee and 4-day limit are narrowly tailored.  In *City of Cincinnati v. Discovery Network, Inc*., 507 U.S. 410 (1994), the Court

observed that "[a] regulation need not be 'absolutely the least severe that will achieve the desired end,' . . . but if there are *numerous and less burdensome alternatives* to the restriction on . . . speech, that is certainly a relevant consideration in determining whether the 'fit' between the ends and means is reasonable." *Id*. at 417 n.13 (emphasis supplied) (citing *Bd. of Trustees of Univ. of N.Y. v. Fox,* 492 U.S. 469, 480 (1989).

Similarly, *Project 80's, Inc. v. City of Pocatello*, 942 F.2d 635 (9ᵗʰ Cir. 1991) held that "[b]y pointing out the alternatives available to the cities to advance their interests, we do not impose a least restrictive means requirement. Rather, we conclude, as did the Supreme Court in *Fox*, that restrictions which disregard far less restrictive and more precise means are not narrowly tailored." *Id*. at 638; *see also Cuviello*, 944 F.3d at 82; *Multimedia Publ'g Co. v. Greenville-Spartanburg Airport Dist.*, 991 F.2d 154, 161 (4ᵗʰ Cir. 1993)("While the Commission need not choose the most reasonable regulation available to it, its failure to select this simple, available alternative suggests something about both the veracity of its asserted justification and the reasonableness of its blanket ban.).

There is no articulable justification for the restrictions UCLA has placed on Krishna Lunch. The twice-weekly program held during the Spring and Summer quarters is a testament to Krishna Lunch's compatibility with the UCLA campus and environment. *Cf. Kuba*, 387 F.3d at 857 ("We hold that protest activity is not inherently incompatible with the activity to which the parking lots and walk-ways outside the Cow Palace are dedicated"); *accord Cuviello*, 944 F.3d at 826.

Nor could the $500 fee be justified, in light of UCLA's decision to not assess any costs on Krishna Lunch's spring and summer activities. Perhaps  UCLA Administrators saw that Krishna Lunch was very popular and well-received by the students, and they viewed the fee as a way to augment their already corpulent budget of over $9 billion a year. *See* UCLA Annual Financial Report 2020-2021 at

MEMORANDUM OF LAW IN SUPPORT OF MOTION FORPRELIMINARY INJUNCTION

https://ucla.app.box.com/v/acct-pdf-AFR-20-21, last visited Oct. 31, 2022)

Krishna Lunch, however, does not have substantial income or resources. (Brown Decl. ¶¶ 9-11).  Should the UCLA restrictions be upheld, it would be the death knell for a  program that is not only disseminating a timely and compelling message about animal protection, but is providing a valuable service to the students and all the members of the UCLA community.

III.    PLAINTIFF IS ENTITLED TO RELIEF PENDENTE LITE.

Plaintiffs seeking injunctive relief must show that: (1) they are likely to succeed on the merits; (2) they are likely to suffer irreparable harm in the absence of preliminary relief; (3) the balance of equities tips in their favor; and (4) an injunction is in the public interest. *Toyo Tire Holdings of the Americas. Inc. v. Continental Tires of North America, Inc.*, 609 F.3d 975, 982 (9th Cir. 2010) (*citing Winter v. Natural Res. Def. Council, Inc.*, 555 U.S. 7, 129 S. Ct. 365, 172 L. Ed.2d 249 (2008)). An injunction may also be appropriate when a plaintiff raises "serious questions going to the merits," demonstrates that "the balance of hardships tips sharply in the plaintiff's favor," and "shows that there is a likelihood of irreparable injury and that the injunction is in the public interest." *Alliance for the Wild Rockies v. Cottrell*, 632 F.3d 1127, 1135 (9th Cir. 2011) (quoting *The Lands Council v. McNair*, 537 F.3d 981, 987 (9th Cir. 2008) ).

A.  <u>Likelihood Of Success On The Merits</u>. Plaintiff has demonstrated that it is likely to prevail on the merits. At the very least, plaintiff has raised serious questions going to the merits. The Ninth Circuit "has adopted and applied a version of the sliding scale approach under which a preliminary injunction could issue where the likelihood of success is such that 'serious questions going to the merits were raised and the balance of hardships tips sharply in [plaintiff's] favor.'" *Alliance for the Wild Rockies v. Cottrell*, 632 F.3d 1127, 1135 (9th Cir. 2011) (quoting *The Lands Council v. McNair*, 537 F.3d 981, 987 (9th Cir. 2008); *see*

1   *also Weaver*, 370 F. Supp. 3d at 1134.[13]

2       B. <u>Irreparable Harm And The Balance Of Hardships</u>.  "Because [plaintiff]

3   has established a likelihood of success on the merits, irreparable harm is also

4   established for purposes of the preliminary injunction stage of this matter." *Higher*

5   *Taste v. City of Tacoma*, 755 F. Supp.2d 1130, 1137-38 (W.D. Wash. 2010). In

6   particular, the harm caused by a prior restraint, such as that here, is particularly

7   egregious.  "Prior restraints on speech present some of the 'most serious and the

8   least tolerable infringement' on free speech rights." *Cuviello*, 944 F.3d at 831.

9   "[A] prior restraint stifles speech before it can take place, freezing it altogether. . .

10  Even if that freeze is only temporary, the loss or threatened infringement upon free

11  speech rights 'for even minimal periods of time[ ] unquestionably constitutes

12  irreparable injury.'" *Id.* at 837*; see Elrod v. Burns*, 427 U.S. 347, 373 (1976).

13      Conversely, there is no corresponding harm to UCLA by allowing Krishna

14  Lunch to continue its campus activities. Krishna Lunch distributed its sanctified

15  food for over four months during the Spring and Summer quarters without any

16  negative effects at all. Any harm to UCLA is minuscule,

17      C. <u>Public Interest</u>.  Where a party establishes the likelihood of success on

18  the merits, or serious questions going to the merits of the issue, the public interest

19  will be correspondingly implicated in injunction actions involving First

20  Amendment challenges. *Gannett Co., Inc. v. DePasquale,* 443 U.S. 368, 383

21  (1979)(it is always in the public interest to prevent one from violating another's

22  constitutional rights).  Krishna Lunch's expressive purpose is consistent with

23  UCLA's "quintessential [mission as a] 'marketplace of ideas.'" Thomas J.

24  Davis. *Assessing Constitutional Challenges to University Free Speech Zones*

25  
26      [13] "For the reasons identified by our sister circuits and our district courts, we
27  join the Seventh and the Second Circuits in concluding that the "serious
questions" version of the sliding scale test for preliminary injunctions remains
28  viable after the Supreme Court's decision in *Winter." Cottrell*, 632 F.3d at 1134.

MEMORANDUM OF LAW IN SUPPORT OF MOTION FORPRELIMINARY INJUNCTION

*Under Public Forum Doctrine*, 79 Ind. L. J. 267, 275 (2004) and should be protected from UCLA's misguided efforts to stifle Plaintiff's message.[14]  The "First Amendment's purpose [is] 'to preserve an uninhibited marketplace of ideas in which truth will ultimately prevail'" *McCullen*, 573 U.S. at 476 (citation omitted) and not to stifle, or suppress, a timely and compelling message as Plaintiff is disseminating at UCLA.

## CONCLUSION

The Court should grant a preliminary injunction permitting it to operate its vegan/vegetarian lunch program on the same basis as in the spring and summer quarters, and prohibiting the new requirement of a $500 per day fee and the limitation to four days per quarter.

Dated: November 18, 2022          Respectfully Submitted,

Law Offices of David M. Liberman
                              -and-
Law Offices of Robert C. Moest

By: _____/s/Robert C. Moest_____
        Robert C. Moest
Attorneys for Plaintiff

---

[14]  "[T]he First Amendment's purpose is 'to preserve an uninhibited marketplace of ideas in which truth will ultimately prevail.'" *McCullen,* 573 U.S. at 476 (citation omitted); *Pacific Gas & Elec. v. P.U.C. of California,* 475 U.S. 1, 8 (1986) ("By protecting those who wish to enter the marketplace of ideas from government attack, the First Amendment protects the public's interest in receiving information.").

MEMORANDUM OF LAW IN SUPPORT OF MOTION FORPRELIMINARY INJUNCTION