Raymond A. Cardozo (SBN 173263)
rcardozo@reedsmith.com
Brian A. Sutherland (SBN 248486)
bsutherland@reedsmith.com
Charles P. Hyun (SBN 307817)
chyun@reedsmith.com
REED SMITH LLP
101 Second Street, Suite 1800
San Francisco, CA 94105-3659
Telephone:  +1 415 543 8700
Facsimile:   +1 415 543 8269

Attorneys for Defendant
MICHAEL J. BECK

UNITED STATES DISTRICT COURT

CENTRAL DISTRICT OF CALIFORNIA

WESTERN DIVISION

| | |
|---|---|
| KRISHNA LUNCH OF SOUTHERN CALIFORNIA, INC., a California nonprofit religious corporation,<br><br>Plaintiff,<br><br>v.<br><br>MICHAEL J. BECK, in his official capacity,<br><br>Defendant. | Case No. 2:22-cv-08265-DSF-PLA<br><br>**MEMORANDUM OF POINTS AND AUTHORITIES IN OPPOSITION TO PLAINTIFF'S MOTION FOR A PRELIMINARY INJUNCTION**<br><br>Hon. Dale S. Fischer<br>Courtroom 7D |

# TABLE OF CONTENTS

**Page**

INTRODUCTION ..................................................................................................... 1

BACKGROUND ...................................................................................................... 3

ARGUMENT ........................................................................................................... 6

I.    Krishna Lunch Fails To Show That It Is Likely To Succeed
      On The Merits.................................................................................................. 6

      A.    Krishna Lunch's Food Distribution Is Not Expressive Activity .............. 6

      B.    UCLA Campus Is Not A Public Forum ..................................................... 8

      C.    UCLA's Policies Are Reasonable ........................................................... 11

            1.    Bruin Plaza........................................................................................ 11

            2.    Bruin Walk ........................................................................................ 13

II.   Krishna Lunch Fails To Show That It Would Suffer Irreparable
      Harm In The Absence Of A Preliminary Injunction ......................................... 14

III.  Krishna Lunch Fails To Show That The Balance Of Equities Tips In
      Its Favor Or That An Injunction Would Serve The Public Interest ................... 14

IV.   This Requested Injunction Is Unauthorized ..................................................... 16

CONCLUSION ...................................................................................................... 17

# TABLE OF AUTHORITIES

**Page(s)**

**Cases**

*Arkansas Educational Television Comm'n v. Forbes*,
   523 U.S. 666 (1998)..........................................................................9, 10

*Atlanta Journal & Constitution v. City of Atlanta Dep't of Aviation*,
   322 F.3d 1298 (11th Cir. 2003) ...........................................................11

*Cornelius v. NAACP Legal Def. & Educ. Fund*,
   473 U.S. 788 (1985)..........................................................................9, 12

*Cottonwood Envtl. Law Ctr. v. Gianforte*,
   No. 20-36125, 2022 U.S. App. LEXIS 5485 (9th Cir. Mar. 2, 2022)...............16

*DiLoreto v. Downey Unified Sch. Dist. Bd. of Educ.*,
   196 F.3d 958 (9th Cir. 1999) ...................................................................9

*Edge v. City of Everett*,
   929 F.3d 657 (9th Cir. 2019) ...............................................................7, 8

*Foster v. Reverse Mortgage Solutions, Inc.*,
   No. CV 19-10039 DSF, 2020 U.S. Dist. LEXIS 137727 (C.D. Cal.
   May 13, 2020) ........................................................................................16

*Heffron v. International Society for Krishna Consciousness*,
   452 U.S. 640 (1981)................................................................................10

*International Society for Krishna Consciousness v. Lee*,
   505 U.S. 672 (1992)..........................................................................10, 13

*Krishna Lunch of S. Cal., Inc. v. Gordon*,
   797 F. App'x 311 (9th Cir. 2020)........................................................6, 7

*L.A. Alliance for Human Rights v. County of L.A.*,
   14 F.4th 947 (9th Cir. 2021) ..................................................................16

*O'Brien v. Welty*,
   818 F.3d 920 (9th Cir. 2016) ..................................................................11

*Pacific Radiation Oncology, LLC v. Queen's Medical Center*,
   810 F.3d 631 (9th Cir. 2015) ..................................................................16

MEMORANDUM OF POINTS AND AUTHORITIES IN OPPOSITION
TO PLAINTIFF'S MOTION FOR A PRELIMINARY INJUNCTION

*Price v. Garland*,
   45 F.4th 1059 (D.C. Cir. 2022) ........................................................................ 11

*Rosenberger v. Rector & Visitors of the Univ. of Virginia*,
   515 U.S. 819 (1995) ........................................................................................ 9

*Souders v. Lucero*,
   196 F.3d 1040 (9th Cir. 1999) ........................................................................ 9

*South Bay United Pentecostal Church v. Newsom*,
   985 F.3d 1128 (9th Cir. 2021) ...................................................................... 14

*Swarner v. United States*,
   937 F.2d 1478 (9th Cir. 1991) ...................................................................... 12

*Widmar v. Vincent*,
   454 U.S. 263 (1981) ........................................................................................ 9

*Winter v. NRDC, Inc.*,
   555 U.S. 7 (2008) ................................................................................. 6, 14, 15

**Statutes**

42 U.S.C. § 1983 ............................................................................................ 5, 6

**Rules**

Fed. R. Civ. P. 12(b)(6) ................................................................................ 6, 8

**California Constitution**

Cal. Const. art. IX, § 9(a) ................................................................................. 1

MEMORANDUM OF POINTS AND AUTHORITIES IN OPPOSITION
TO PLAINTIFF'S MOTION FOR A PRELIMINARY INJUNCTION

# INTRODUCTION

The University of California is just that:  a university whose space exists so that students and faculty can devote themselves to the university's educational mission. Free speech is welcomed on campus, subject to reasonable rules that conserve the campus's spaces primarily for students and faculty.  Thus, although members of the general public who are neither students nor faculty are free to speak in certain campus spaces, they do not, of course, have free rein to enter classrooms whenever they like. Similarly, although members of the general public may obtain permission to distribute food in certain campus spaces at certain times, they cannot come into a classroom, or student dining hall, to name just a couple of examples, and sell or distribute food.

Nevertheless, plaintiff Krishna Lunch of Southern California, Inc. ("Krishna Lunch"), who is a member of the general public and not affiliated with the University, claims that it has a First Amendment right to distribute food at a busy campus location and without regard to reasonable content-neutral rules that the University has applied to the proposed activity.  Because the First Amendment precludes the University from favoring particular speakers, Krishna Lunch's position would entitle *any* member of the public who wants to sell food on campus to do so free of reasonable University rules.  Its view of the law would enable the general public to overtake University campus spaces and crowd out students and faculty.  Not surprisingly, that view has no support in the case law, which instead distinguishes between general public forums, and a university's campus, which the University has the right to control and over which it has broad discretion to impose reasonable rent or other rules.

The University of California is organized under the California Constitution as a public trust.  Cal. Const. art. IX, § 9(a).  The Regents of the University of California administers the public trust and is "vested with the legal title and the management and disposition of the property of the university and of property held for its benefit."  *Id.* § 9(f).  This case is about a space at the heart of the University of California, Los Angeles ("UCLA") known as Bruin Plaza.  UCLA contends that it may charge a

1  rental fee of $500 to nonprofit outside groups for use of university space and limit the

2  number of times per quarter that outside groups may reserve and use Bruin Plaza.

3      After this Court denied Krishna Lunch's application for a temporary restraining

4  order, Krishna Lunch moved for a preliminary injunction.  Its motion asks this Court

5  to order UCLA to allow Krishna Lunch to distribute food on UCLA campus at least

6  two days per week without paying the $500 rental fee.  Krishna Lunch bases its

7  motion on the idea that a rental fee and limit on the number of times an outside group

8  may reserve and use university property amounts to a "prior restraint" on speech.  But

9  Krishna Lunch is wrong.  UCLA is a university, not a public park.  UCLA retains

10 control over use of its property for the primary benefit of students.  As a matter of

11 First Amendment doctrine and UCLA policy, UCLA campus is not a traditional

12 "public forum."  Krishna Lunch's motion misses this fundamental point and confuses

13 the circumstances of this case, involving UCLA's own property, with cases in which

14 governments restricted use of traditional public forums.  In short, a property owner

15 does not restrain speech by charging a rental fee or limiting use of its property.

16      Krishna Lunch has requested use of Bruin Plaza, as alleged in the complaint

17 and as UCLA's records confirm.  But its motion confusingly requests an injunction

18 "[r]estoring plaintiff's right to conduct its vegan/vegetarian lunch program on the

19 same terms it did during the spring and summer quarters of 2022."  Mot. 1:27-28.

20 This request for injunctive relief makes no sense because Krishna Lunch distributed

21 food on a provisional and temporary basis on *Bruin Walk East*, not Bruin Plaza, and

22 the complaint does not allege that Krishna Lunch has applied for a permit to distribute

23 food on Bruin Walk East.  Krishna Lunch alleges that it requested and has a right to

24 distribute food at Bruin Plaza, and its request for injunctive relief based on claims not

25 alleged in the complaint is improper.  Krishna Lunch cannot succeed on a claim that it

26 did not bring and that is meritless in any event.

27      Even if Krishna Lunch had alleged that it has a constitutional right to distribute

28 food on *Bruin Walk East* (and it made no such allegation), it would have no likelihood

1  of success on that claim either.  UCLA permitted Krishna Lunch to conduct a

2  provisional and temporary trial run at the tail end of the spring quarter and during the

3  summer quarter of 2022.  That experience demonstrated that Krishna Lunch's

4  program generates traffic levels that are inconsistent with the needs of the sidewalk

5  space during times when more students are on campus, *i.e.*, during the regular school

6  year.  For all these reasons and those stated below, this Court should deny the motion.

7                              **BACKGROUND**

8          UCLA owns and controls the property in Los Angeles on which its campus is

9  located.  Declaration of Michael Deluca ¶ 3.  Like other colleges or universities that

10  are partially publicly funded, certain designated parts of the UCLA campus are open

11  to the public during certain hours and subject to certain restrictions.  Deluca Decl. ¶ 3.

12  Some spaces are generally open to the public during daylight hours, such as paved

13  sidewalks and walkways.  Deluca Decl. ¶ 5.  Other spaces may be reserved by

14  students, university departments, and outside groups.  Deluca Decl. ¶ 5.  Bruin Plaza

15  is not a walkway or public lawn.  Deluca Decl. ¶ 5.  Students and university

16  departments may reserve Bruin Plaza for their exclusive use for events.  Deluca Decl.

17  ¶ 5.  UCLA also permits outside groups to reserve Bruin Plaza, but on a limited basis,

18  to ensure that students and university departments have priority access to the space

19  throughout the year.  Deluca Decl. ¶ 5.  If UCLA permitted an outside group to

20  reserve an unlimited number of days per quarter, outside groups could reserve all the

21  dates, leaving none for students and university departments.  Deluca Decl. ¶ 5.

22          The UCLA Events Office administers extracurricular uses of campus property

23  and is responsible for reviewing and approving proposed extracurricular uses by

24  outside groups.  Declaration of Chansoth Hill ¶¶ 1, 3.  An outside group seeking to

25  host an event on UCLA campus may contact the Events Office by email or phone to

26  inquire about their proposed event.  Hill Decl. ¶ 3.  The Events Office and its staff

27  work with inquiring groups and individuals, as a central point of contact, to assist

28

1  them with the process of reserving space on campus and securing permits for

2  temporary food distribution, if needed.  Hill Decl. ¶ 3.

3          The application process and permits required to engage in proposed use of

4  UCLA space depend on the proposed use of the space.  Hill Decl. ¶ 4.  For example, if

5  an outside group or student group asked for permission to pass out flyers (without

6  amplification and/or bringing equipment including tents and tables), the Events Office

7  likely would approve such an application with conditions concerning the time, place,

8  and manner of such an event, and additional permits likely would not be necessary.

9  Hill Decl. ¶ 4.  In this example, the group might be able to hand out flyers on Bruin

10 Walk for a specified duration (depending on other University events and traffic).  Hill

11 Decl. ¶ 4.  On the other hand, if an outside group or student group asks to reserve

12 space to distribute or sell food on campus, the group must secure a permit from

13 UCLA's Environmental Health & Safety Department, which oversees the food permit

14 process for temporary distribution of food at special events, and approval from the

15 Associated Students of UCLA (ASUCLA).  Hill Decl. ¶ 4; Deluca Decl. ¶¶ 6-8 &

16 Exs. 1-2.

17         At least as far back as 2016, Krishna Lunch's demands for frequent use of

18 UCLA space have created unique challenges for UCLA.  To the best of UCLA's

19 knowledge, no other outside group has demanded the right to distribute food to the

20 students, campus community, and public on UCLA's campus on a regular basis

21 without having to pay UCLA anything for that privilege or use of UCLA's property.

22 Hill Decl. ¶ 8.

23         The closest analogy—entities that operate restaurants on UCLA's campus—

24 must enter into a contract with UCLA that requires substantial rent or revenue sharing,

25 along with other obligations.  Declaration of Cindy Bolton ¶¶ 3-11.  When anyone

26 accepts a meal from Krishna Lunch and pays its requested donation fee, that payment

27 represents funds that likely would have gone to a campus restaurant, whose revenue is

28 at least partially shared with the University or student organizations.  Bolton Decl. ¶ 4.

1   UCLA students obtain their broader campus use and access rights by paying

2   substantial tuition and campus fees.

3        UCLA has not agreed to allow Krishna Lunch to distribute food on campus

4   every day.  Hill Decl. ¶ 8.  Nevertheless, as a temporary accommodation, UCLA

5   allowed Krishna Lunch to distribute food on Bruin Walk East twice per week on

6   specified dates in June 2022, for a total of eight events.  Hill Decl. ¶ 9 & Ex. 1.  That

7   agreement was later extended through September 15, 2022.  Hill Decl. ¶ 10 & Ex. 2.

8   Because of the unique circumstances of Krishna Lunch's demands, UCLA specifically

9   cautioned Krishna Lunch that the provisional grant was not a guarantee that similar

10  accommodations would be made in the future.  Hill Decl. ¶ 8.

11       With the approaching fall quarter (which is significantly busier than the summer

12  quarter) and campus activity returning to pre-pandemic levels, UCLA could no longer

13  provide special accommodation to Krishna Lunch.  Hill Decl. ¶¶ 11-12.  To that end,

14  UCLA informed Krishna Lunch that it could no longer offer space for food

15  distribution on Bruin Walk and suggested that Krishna Lunch apply to rent space at

16  Bruin Plaza for $500 per half day, and no more than four times per quarter.  Hill Decl.

17  ¶ 12.  Krishna Lunch requested permission to host its lunch program at Bruin Plaza,

18  but without paying the $500 rental fee.  Hill Decl. ¶ 12, 15.  UCLA denied Krishna

19  Lunch's request for waiver of the rental fee.  Hill Decl. ¶ 12, 16.  This lawsuit

20  followed.

21       In its complaint, Krishna Lunch alleges that it "seeks to hold a vegan and

22  vegetarian lunch program twice a week at a small location on the west side of Bruin

23  Plaza …."  Compl. ¶ 2; see also id. ¶¶ 24, 33, 44.  Krishna Lunch contends that it

24  cannot afford to pay the $500 per day fee.  Compl. ¶ 33.  It alleges that the $500 fee is

25  an unconstitutional "prior restraint."  Compl. ¶ 45.  Krishna Lunch also alleges that

26  limiting use of the space by outside groups to four times per quarter is

27  unconstitutional.  Compl. ¶ 46.  Krishna Lunch asserts two causes of action under 42

28

U.S.C. § 1983, one for alleged violation of its freedom of speech, and another for alleged violation of its freedom of assembly and association.  Compl. ¶¶ 10-11.

**ARGUMENT**

"A plaintiff seeking a preliminary injunction must establish that he is likely to succeed on the merits, that he is likely to suffer irreparable harm in the absence of preliminary relief, that the balance of equities tips in his favor, and that an injunction is in the public interest."  *Winter v. NRDC, Inc.*, 555 U.S. 7, 20 (2008).  Krishna Lunch has not carried and cannot carry its burden.

## I.   Krishna Lunch Fails To Show That It Is Likely To Succeed On The Merits

Krishna Lunch is not likely to succeed on the merits.  First, Krishna Lunch has not shown that its food distribution is expressive activity.  Second, even if Krishna Lunch could make that showing, it incorrectly equates the UCLA campus with a traditional public forum such as a street or a park.  Case law makes clear, however, that a university campus such as UCLA differs significantly from a traditional public forum because it is maintained primarily for the benefit of the student body.  For that reason, UCLA—like any public university—need not make all of its facilities equally available to students and non-students such as Krishna Lunch.  Third, UCLA's policies are reasonable.  Bruin Plaza is not a public forum and the content-neutral rental fee and use limitations are reasonable.  Bruin Walk is not a public forum either and, in any event, UCLA's traffic congestion and priority of use limitations are reasonable there as well.

### A.   Krishna Lunch's Food Distribution Is Not Expressive Activity

UCLA's observations over the summer during the provisional permitting period indicated that while Krishna Lunch claims that its food distribution has a communicative or expressive component, it is mainly just selling food on campus.  Hill Decl. ¶ 11.  Thus, while the Ninth Circuit previously held that Krishna Lunch "*plausibly pleaded*" that its food distribution amounts to First Amendment-protected expression for Rule 12(b)(6) purposes (*Krishna Lunch of S. Cal., Inc. v. Gordon*, 797

- 6 -

F. App'x 311, 313 (9th Cir. 2020)), Krishna Lunch is unlikely to succeed on the *merits* of that claim.  The Ninth Circuit reasoned that Krishna Lunch had alleged the following facts:

> While distributing prasada, the organization plans on chanting the names of God and other devotional hymns and songs, speaking with interested students and others of the [UCLA] community, distributing religious literature, and displaying signs depicting reincarnation, animal protectionism, and other topics related to its followers' beliefs. Drawing all reasonable inferences in favor of Krishna Lunch, we can infer that in these circumstances an onlooker would understand the distribution of food "to be communicative."

797 F. App'x at 313.

During multiple observations of the Krishna Lunch program over the summer, UCLA Events Office Director Chansoth Hill did not witness chanting of the names of God, or the singing of hymns or songs, and observed very little speaking with interested students about Krishna consciousness, if any.  Hill Decl. ¶ 11.  What Ms. Hill saw was Krishna Lunch selling food, much as any other vendor would sell food, by exchanging food for payment.  Hill Decl. ¶ 11.  This ordinary exchange does not have any independent communicative meaning because paying for food is routine and necessary, not symbolic.

The Ninth Circuit's decision in *Edge v. City of Everett*, 929 F.3d 657 (9th Cir. 2019), is directly on point.  In that case, the district court had granted a preliminary injunction in connection with First Amendment claims, but the Ninth Circuit vacated the injunction.  On a motion for preliminary injunction, the district court could not merely accept the plaintiffs' allegation that distributing food and coffee while wearing bikinis constituted expressive activity; rather, the plaintiffs had the burden to show "(1) an intent to convey a particularized message and (2) a great likelihood that the message would be understood by those who viewed it." *Edge*, 929 F.3d at 668

(quotation marks and ellipsis omitted).  The Ninth Circuit held: "Because plaintiffs have not demonstrated a 'great likelihood' that their intended messages related to empowerment and confidence will be understood by those who view them, we conclude that the mode of dress at issue in this case is not sufficiently communicative to merit First Amendment protection."  *Id.* at 669.

Because of the differences in procedural posture between a defendant's motion to dismiss under Rule 12(b)(6) and a plaintiff's motion for a preliminary injunction under Rule 65, *Edge* is the relevant precedent here.  Here, as in *Edge*, Krishna Lunch has not demonstrated and cannot demonstrate a great likelihood that its alleged "message about the spiritual, environmental, and medical benefits of a vegetarian and/or vegan diet" (Compl. ¶ 2) would be understood by those who see volunteers selling food.  Context is everything.  *Edge*, 929 F.3d at 669.  When people engage in ordinary acts like selling food, the intended symbolic meaning is lost on the uninitiated.  Put differently, the act of selling food to paying customers creates a high likelihood that the message sent is that food is for sale, which is not the purported spiritual, environmental, or medical message.  *See id.*  Krishna Lunch fails to show otherwise, and its motion should be denied.

## B.    UCLA Campus Is Not A Public Forum

Assuming for the sake of argument that the Court concludes that Krishna Lunch has carried its burden to show that its proposed food distribution amounts to First Amendment-protected activity (and it should not), it should hold that UCLA's campus is not a public forum and/or that UCLA's policies governing the use of its own property are reasonable.  Krishna Lunch has not carried its burden to show otherwise.

Krishna Lunch alleges that the UCLA campus is a "public forum."  Compl. ¶¶ 38, 44.  It is wrong.  UCLA campus is university property and *not* a traditional public forum.  "Nothing in the Constitution requires the Government freely to grant access to all who wish to exercise their right to free speech on every type of Government property without regard to the nature of the property or to the disruption

that might be caused by the speaker's activities." *Cornelius v. NAACP Legal Def. & Educ. Fund*, 473 U.S. 788, 799-800 (1985).  The Supreme Court has held that, apart from traditional public forums, such as streets and parks, "the government retains the choice of whether to designate its property as a forum for specified classes of speakers." *Arkansas Educational Television Comm'n v. Forbes*, 523 U.S. 666, 680 (1998).  For that reason, certain "government properties are either nonpublic fora or not fora at all." *Id.* at 677.

Any public property that is not by tradition or designation a forum for public communication is classified as a nonpublic forum.  *See DiLoreto v. Downey Unified Sch. Dist. Bd. of Educ.*, 196 F.3d 958, 965 (9th Cir. 1999).  UCLA's campus is not by tradition or designation a public forum; therefore, it is a nonpublic forum.  It is well-settled that "[a] university differs in significant respects from public forums such as streets or parks or even municipal theaters." *Widmar v. Vincent*, 454 U.S. 263, 267 n.5 (1981).  The Court stated in *Widmar* that it had "never denied a university's authority to impose reasonable regulations compatible with [its] mission upon the use of its campus and facilities." *Id.*   University "facilities are not open to the public in the same way that streets and parks are." *Souders v. Lucero*, 196 F.3d 1040, 1044 (9th Cir. 1999) (quotation marks omitted).  "University facilities—private and public—are maintained primarily for the benefit of the student body and the faculty." *Id.* (quotation marks omitted).  Thus, a university need not make its facilities or grounds equally available to students and nonstudents alike.  *See Widmar*, 454 U.S. at 267 n.5.  "The necessities of confining a forum to the limited and legitimate purposes for which it was created may justify the State in reserving it for certain groups or for the discussion of certain topics." *Rosenberger v. Rector & Visitors of the Univ. of Va.*, 515 U.S. 819, 829 (1995).

As the Supreme Court has explained, the "distinction between 'general access,' which indicates the property is a designated public forum, and 'selective access,' which indicates the property is a nonpublic forum," advances First Amendment

interests. *Arkansas Educational Television*, 523 U.S. at 680. That is because "[b]y recognizing the distinction, we encourage the government to open its property to some expressive activity in cases where, if faced with an all-or-nothing choice, it might not open the property at all." *Id.* at 680. Krishna Lunch is trying to force UCLA to make an "all-or-nothing" choice here, but the Court should reject that effort. Decades of precedent have rejected similar efforts, including by other groups advocating Krishna consciousness, to transform selective access to government-owned properties into general, all-purpose access. *See International Society for Krishna Consciousness v. Lee*, 505 U.S. 672, 683-85 (1992); *Heffron v. International Society for Krishna Consciousness*, 452 U.S. 640, 648-49 (1981).

UCLA owns and controls the property in Los Angeles on which its campus is located. Deluca Decl. ¶ 3. It uses the property for the benefit of students. Deluca Decl. ¶¶ 3-4. For many years, UCLA has designated Bruin Plaza in particular as a space that student groups and outside groups may use only with permission and subject to conditions. Deluca Decl. ¶ 9. In the language of First Amendment doctrine, UCLA has designated Bruin Plaza as a nonpublic forum and has reserved the right to rent Bruin Plaza to outside groups on a limited basis. Deluca Decl. ¶ 9. Thus, it operates and restricts use of Bruin Plaza as a property owner. Deluca Decl. ¶ 9.

Although Bruin Walk should not be at issue here because Krishna Lunch requested use of Bruin Plaza, UCLA notes that Bruin Walk likewise is also not a traditional or designated public forum. UCLA does not rent Bruin Walk and it is generally open to the public for some purposes, including walking and talking. Deluca Decl. ¶ 10. But UCLA also reserves the right to limit the use of Bruin Walk to prioritize student use. Deluca Decl. ¶ 10. To be clear: because Bruin Walk is university-owned property, it could and occasionally does close Bruin Walk to the general public. Deluca Decl. ¶ 10. To the extent that UCLA has opened Bruin Walk to the public, it does so only to a limited extent consistent with maintaining a safe and pleasant student experience. Deluca Decl. ¶ 10.

1    In this lawsuit, Krishna Lunch contends that charging a $500 rental fee for use

2    of Bruin Plaza is a "prior restraint."  Krishna Mem. 8-9.  But it is incorrect because

3    Bruin Plaza is a nonpublic forum and property owners do not violate the First

4    Amendment by controlling use of the space.  Contrary to Krishna Lunch's assertion

5    that the permit fee is impermissible, in the context of a nonpublic forum, "[t]he fee is

6    not an impermissible charge for engaging in constitutionally protected activity; it is

7    reasonable extraction of a rent by the owner of a property."  *Price v. Garland*, 45

8    F.4th 1059, 1073 (D.C. Cir. 2022) (citing *Atlanta Journal & Constitution v. City of*

9    *Atlanta Dep't of Aviation*, 322 F.3d 1298, 1309 (11th Cir. 2003)).

10       **C.    UCLA's Policies Are Reasonable**

11            **1.    Bruin Plaza**

12    Where, as is the case here, a forum is nonpublic, a public entity may select or

13   limit who uses its space as long as its rules meet the requirements of reasonableness

14   and viewpoint neutrality.  *See O'Brien v. Welty*, 818 F.3d 920, 931 (9th Cir. 2016).

15   Krishna Lunch does not dispute that UCLA's policies are viewpoint neutral.  Nor

16   could it.  Any outside group, regardless of viewpoint, would be subject to UCLA's

17   policies limiting the number of times per quarter that outside groups may use Bruin

18   Plaza and charging rental fees for use of that space.  Deluca Decl. ¶ 5.

19    UCLA's rental fees for nonprofit organizations such as Krishna Lunch are

20   reasonable.  UCLA based its price list for use of Bruin Plaza on the reasonable rental

21   value of the space and what other universities charge to outside groups to rent

22   comparable university space.  Hill Decl. ¶ 17.  Consistent with UCLA's mission to

23   serve students and the public, UCLA charges different rental fees based on the nature

24   of the use, *i.e.*, it differentiates between for-profit and non-profit uses by outside

25   groups.  Hill Decl. ¶ 17 & Ex. 3.  In turn, UCLA uses the fees it receives for use of the

26   space by outside groups to support student programs.  Hill Decl. ¶ 17.  Krishna Lunch

27   has not demonstrated that fees for use of nonpublic forum space are unreasonable or

28

that it is likely to succeed on that issue.  In fact, the rental fees for nonprofit entities are far lower than those charged to commercial entities.  Hill Decl. ¶ 17 & Ex. 3.

Moreover, because Bruin Plaza and comparable campus locations are reserved for special events, not regular operation for food distribution, the rental fees and associated costs are considerably lower than those that third-party restaurants incur. Third-party restaurants on campus are subject to extensive conditions and policies. Bolton Decl. ¶ 9.  They lease space from UCLA.  Bolton Decl. ¶ 5.  They are responsible for the cost of constructing and building out the space they wish to use, when it becomes available.  Bolton Decl. ¶ 10.  Restaurant businesses typically invest hundreds of thousands or millions of dollars to start a single restaurant on UCLA's campus.  Bolton Decl. ¶ 10.  When compared with the cost of starting and operating a restaurant on campus, the $500 per half-day rental fee is trivial.  At a minimum, it is reasonable.

UCLA's policy limiting the number of times that outside groups may reserve Bruin Plaza to four times per quarter is also reasonable.  The outside use limitation serves a legitimate interest in prioritizing student and university department use of the space and maintaining availability for students.  Deluca Decl. ¶ 5.  The First Amendment does not require UCLA to make Bruin Plaza available to outside groups merely because they would find use of that space efficient for delivering their messages.  *See Cornelius*, 473 U.S. at 809.  Outside groups can use alternative communication channels.  "Rarely will a nonpublic forum provide the only means of contact with a particular audience."  *Id.*; *see also Swarner v. United States*, 937 F.2d 1478, 1482 (9th Cir. 1991).

Krishna Lunch has numerous alternative channels for communication.  For example, Krishna Lunch may *talk* about its religious beliefs on Bruin Walk without distributing food.  Krishna Lunch may seek permission to distribute food in public parks or in other public locations.  Krishna Lunch may potentially apply to become a permanent restaurant on UCLA's campus when a vacancy arises, depending on UCLA

1   needs and analysis.  Bolton Decl. ¶¶ 6-8.  Or it may seek to operate a restaurant on

2   private property near UCLA campus.  In short, Krishna Lunch is free to do what every

3   other similarly-situated food distributor in Los Angeles may do.

4          But Bruin Plaza is not meant to be a location for a permanent or semi-

5   permanent restaurant and nobody in California may use it as such.  If nothing else,

6   permitting Krishna Lunch to operate a regular food distribution operation on campus

7   without a lease and without undergoing the same licensing and bargaining

8   requirements to which all other restaurants on campus are subject would be manifestly

9   unfair to every other person or entity that wants to sell food on UCLA campus and

10   deprive student programs of revenue.  Bolton Decl. ¶ 4.  To maintain the space for

11   students and promote student programs, UCLA reasonably charges a rental fee for the

12   space and limits outside use to four times per quarter.

13          **2.**     **Bruin Walk**

14          Again, the complaint alleges that UCLA should have granted permission to use

15   Bruin Plaza, not Bruin Walk.  Compl. ¶¶ 2, 24, 33, 44.  But if the Court considers

16   Bruin Walk on this motion, it should hold that Krishna Lunch is unlikely to succeed

17   on the merits because UCLA may reasonably deny use of that space for food

18   distribution based on pedestrian traffic concerns and prioritization of use for students.

19   UCLA has a legitimate interest in ensuring that students, professors, and members of

20   the general public may move freely throughout campus, including through major

21   pedestrian thoroughfares such as Bruin Walk.  *See International Society for Krishna*

22   *Consciousness*, 505 U.S. at 685 (nonpublic forum reasonably prohibited solicitation in

23   airport to alleviate "pedestrian congestion," among other purposes).  The justification

24   for the rule should not be measured solely by the disruption that would result if

25   Krishna Lunch were granted an exemption to this rule.  *See id.*  If UCLA allowed

26   Krishna Lunch to distribute food on campus during the school year, any other outside

27   group may claim the same right, and UCLA could not discriminate among them.

28

1    It is true that UCLA temporarily and provisionally allowed Krishna Lunch to

2  distribute food on Bruin Walk East late in the spring quarter and during the summer

3  quarter.  Hill Decl. ¶¶ 6, 8-1 & Exs. 1-2.  That experience showed food distribution on

4  Bruin Walk East should not continue on a regular basis, especially during the school

5  year, when foot traffic is much heavier.  Hill Decl. ¶ 11.  As the property owner,

6  UCLA had the discretion to make the judgment call regarding whether food

7  distribution on Bruin Walk East should be allowed outside the much lighter summer

8  months, and during the busier school year.  Krishna Lunch does not even allege that

9  prohibiting food distribution on Bruin Walk during the school year is unreasonable,

10  much less does it show that it would be likely to prevail on such an allegation.

11  **II.   Krishna Lunch Fails To Show That It Would Suffer Irreparable Harm In**

12  **The Absence Of A Preliminary Injunction**

13    Krishna Lunch's "irreparable harm" argument depends entirely on the premise

14  that UCLA's rental fee for use of university space amounts to a "prior restraint."  *See*

15  Krishna Lunch Mem. 21:2-12.  As demonstrated above, a rental fee for use of

16  university property is not a "prior restraint" and a rental fee does not restrain Krishna

17  Lunch from speaking.  Because Krishna Lunch's claim of irreparable harm rests on a

18  false premise, it is meritless.

19  **III.   Krishna Lunch Fails To Show That The Balance Of Equities Tips In Its**

20  **Favor Or That An Injunction Would Serve The Public Interest**

21    "Where the government is a party to a case in which a preliminary injunction is

22  sought, the balance of the equities and public interest factors merge."  *South Bay*

23  *United Pentecostal Church v. Newsom*, 985 F.3d 1128, 1149 (9th Cir. 2021).  Here,

24  even if one assumed for the sake of argument that Krishna Lunch had made a showing

25  of irreparable harm (it has not), a preliminary injunction still would not be warranted.

26  *See id.*; *see also Winter*, 555 U.S. at 23 ("even if plaintiffs have shown irreparable

27  injury from the Navy's training exercises, any such injury is outweighed by the public

28  interest and the Navy's interest in effective, realistic training of its sailors").  "A

1  preliminary injunction is an extraordinary remedy never awarded as of right." *Winter*,

2  555 U.S. at 24.  "In each case, courts must balance the competing claims of injury and

3  must consider the effect on each party of the granting or withholding of the requested

4  relief."  *Id.* (quotation marks omitted).

5       Here, UCLA has a legitimate interest in reserving university space at Bruin

6  Plaza for use by students and university departments, as opposed to outside groups.

7  Deluca Decl. ¶ 5.  (Although not at issue in this case because Krishna Lunch

8  challenges only the rental fee in connection with reservation and use of *Bruin Plaza*,

9  UCLA also has legitimate interests in maintaining free and safe flow of traffic on

10 *Bruin Walk*.)  UCLA's modest rental fees for nonprofit groups have remained

11 unchanged for five years and are reasonably consistent with, if not lower than, the

12 rental fee for comparable space at other universities.  Hill Decl. ¶ 17 & Ex. 3.

13 UCLA's strong interest in prioritizing student and departmental use of its own space

14 more than offsets any purported interest Krishna Lunch might have.  At the very least,

15 there is no emergency here that warrants federal supervision of UCLA's policies and

16 land-use decisions and a mandatory injunction compelling issuance of some kind of

17 permit over UCLA's objections.

18      Krishna Lunch has nothing to say about UCLA's interests or the extraordinary

19 intrusion it demands on a pre-trial, expedited basis.  It simply argues, again, that a

20 rental fee for Bruin Plaza violates its rights.  *See* Mot. at 21-22.  It is wrong.  It has no

21 likelihood of succeeding on the merits.  And the intrusion it seeks has no stopping

22 point.  By Krishna Lunch's logic, any outside group could obtain a federal injunction

23 simply by challenging a university's rental fee as a "prior restraint."  If it were correct

24 about that, the federal reporter would be filled with decisions in which federal courts

25 supervised the availability and fees for use of university space.  But no such law

26 exists; to the contrary, the law establishes that a university, like other government

27 entities, may charge a fee for use of nonpublic forum space.  Bruin Plaza is for

28 students and university departments, and outside groups must pay a fee.  The students

1   themselves pay a much more substantial fee in the form of tuition.  Nothing in this

2   ordinary arrangement warrants an injunction, and any injunction would disserve the

3   public interest by harming UCLA and its students.

4   **IV.    This Requested Injunction Is Unauthorized**

5          Apart from Krishna Lunch's inability to meet its burden to establish either of

6   the showings required to obtain a preliminary injunction, there is another fundamental

7   problem that dooms its request:  it has requested relief that is outside the scope of its

8   complaint.

9          A district court has no authority to issue a requested preliminary injunction

10  unless there is "a relationship between the injury claimed in the motion for injunctive

11  relief and the conduct asserted in the underlying complaint." *Pacific Radiation*

12  *Oncology, LLC v. Queen's Med. Ctr.*, 810 F.3d 631, 636 (9th Cir. 2015); *Foster v.*

13  *Reverse Mortgage Solutions, Inc.*, No. CV 19-10039 DSF (FFMx), 2020 U.S. Dist.

14  LEXIS 137727, at *9 (C.D. Cal. May 13, 2020) (Fischer, J.).  "The relationship

15  between the preliminary injunction and the underlying complaint is sufficiently strong

16  where the preliminary injunction would grant relief of the same character as that

17  which may be granted finally." *Id.*  A district court has no discretion to grant

18  preliminary injunctive relief that is broader than the plaintiff's own claims.  *See L.A.*

19  *Alliance for Human Rights v. County of L.A.*, 14 F.4th 947, 960 (9th Cir. 2021)

20  (vacating injunction); *Cottonwood Envtl. Law Ctr. v. Gianforte*, No. 20-36125, 2022

21  U.S. App. LEXIS 5485, at *4 (9th Cir. Mar. 2, 2022) (affirming denial).

22         This Court should deny Krishna Lunch's motion because there is no

23  relationship between the injury claimed in the motion for injunctive relief and the

24  conduct asserted in the underlying complaint.  Krishna Lunch's motion asks for a

25  preliminary injunction "[r]estoring plaintiff's right to conduct its vegan/vegetarian

26  lunch program on the same terms it did during the spring and summer quarters of

27  2022." Mot. at 1-2.  During the late spring and summer quarters of 2022, Krishna

28  Lunch conducted its lunch program on *Bruin Walk East*.  Compl. ¶ 28; Hill Decl.

MEMORANDUM OF POINTS AND AUTHORITIES IN OPPOSITION
TO PLAINTIFF'S MOTION FOR A PRELIMINARY INJUNCTION

1  ¶¶ 8-11.  In its complaint, however, Krishna Lunch alleges that it seeks to conduct its

2  lunch program on *Bruin Plaza*.  Compl. ¶¶ 2, 24, 33, 37, 38, 44.  This request is

3  different: Bruin Plaza is a nonpublic space that outside groups may use only after

4  paying a rental fee, among other things.  Deluca Decl. ¶ 5.  Bruin Walk, by contrast, is

5  generally open to the public but is not well suited to food distribution, especially

6  during the school year.  Deluca Decl. ¶ 10.  Because Krishna Lunch's complaint

7  challenges the denial of the use of Bruin Plaza, it cannot seek a preliminary injunction

8  ordering UCLA to allow use of Bruin Walk.  The Court should deny the motion for a

9  preliminary injunction on this ground as well.

10                                    **CONCLUSION**

11        This Court should deny Krishna Lunch's motion for a preliminary injunction.

12

13  DATED: December 9, 2022

14                                    REED SMITH LLP

15

16                              By:  */s/ Raymond A. Cardozo*

17                                    Raymond A. Cardozo
                                       Brian A. Sutherland
18                                    Charles P. Hyun

19                                    *Attorneys for Defendant Michael J. Beck*

20

21

22

23

24

25

26

27

28